Blemel *et al. v.* Shattuck *et al.*

No. 16,107.

BLEMEL ET AL. *v.* SHATTUCK ET AL.

BILL OF EXCEPTIONS.—*Drainage.*—*Petition to Establish a Ditch.*—*When Petition Need not be in Bill of Exceptions.*—Where the questions raised on appeal, in a drainage case, do not call in question anything contained in the petition to establish the ditch, but are whether the trial court made the proper disposition of the objections to the report of the commissioners, which in no way called in question anything contained in the petition, and which objections did not at all depend, for their validity, on the petition, or anything contained therein, it is unnecessary to embody the petition in the bill of exceptions.

DRAINAGE.—*Motion to Set Aside Commissioners' Report.*—*When Must be Supported by Affidavits, etc.*—A motion to set aside the report of drainage commissioners, being in the nature of a motion for a new trial, and containing matters of fact outside of the record, as grounds therefor, should be supported by affidavit, or other proof of their truth.

SAME.—*Commissioners' Reports.*—*Two Kinds.*—The statute providing for the report of commissioners of drainage authorizes two kinds of reports. One is where any one, or all, of the three facts essential to support a drainage petition is found in the negative, and the other is where the three facts essential to sustain the petition are found in the affirmative. In the former kind of report, the estimated cost of the work, the benefits or injuries to be assessed, etc., are not required, while in the latter they are required.

PRACTICE.—*Motion to Strike Out Another Motion.*—*Effect if Sustained.*—*Frivolous.*—A motion to strike out another motion is frivolous, and ought not to be entertained by the trial court, but, if entertained and sustained, the effect would be equivalent to overruling the first motion.

SAME.—*Motion.*—*When can not be rejected on Motion.*—A motion which shows on its face a right to the relief asked for can not be rejected on the motion of the adverse party.

From the Vigo Circuit Court.

*W. W. Rumsey* and *W. Eggleston*, for appellants.

*S. C. Stimson, R. B. Stimson, A. M. Higgins, S. B. Davis, J. C. Robinson* and *G. M. Davis*, for appellees.

McCABE, J.—This was a proceeding by way of petition,

in the Circuit Court, under the provisions of the drainage act approved April 6, 1885. Elliott's Supp., section 1284.

The petition was referred to the drainage commissioners, pursuant to the provisions of the second section of said act. On objection by the appellant, to the competency of said commissioners, the order referring the petition to them was set aside, and new commissioners were appointed, and the petition was referred to them. They afterwards reported:

*First.* That the drainage proposed is practicable.

*Secondly.* That the drainage, if accomplished, will improve public health, benefit public highways, and be of public utility.

*Thirdly.* That the costs, damages, and expenses of effecting such proposed drainage will largely exceed the benefits to the owners of the lands likely to be benefited by the proposed drainage.

After an unsuccessful motion by the appellants to set aside this report, the same was approved by the court below, and the petition was dismissed pursuant to section 3 of the act of April 6, 1885. Elliott's Supp., section 1186.

From this final order the petitioners appeal to this court, and assign for error these rulings:

The petitioners moved to set aside this report and refer the matter to new commissioners, because, *first*, the report was not verified; *second*, it does not set out the estimated cost of the proposed work; *third*, it does not set out the benefits arising from said work; *fourth*, that Cyrus Drake and Gaston Drake, owners of land affected by the proposed drainage, are second cousins to James Pound, one of the new commissioners, and that the petitioners had no knowledge of such relationship until after said Pound was appointed; *fifth*, that Briggs, one of the new commissioners, while engaged in his duties as such, accepted invitations from Wilford Shaw, and dined with him on several occasions while so engaged, the said Shaw owning land affected by the proposed work, and has counsel employed to defeat

the same; *sixth*, that during the time the commissioners were engaged in making inspections of the lands and deliberating concerning their report, a large number of the defendants followed said commissioners, constantly kept up their clamor and talk against said proposed work, in the hearing of said commissioners; *seventh*, that said commissioners were all three taken from a list of names presented to the court by the defendants, plaintiffs having no voice in the matter, and the commissioners being prejudiced against the plaintiffs from the time of their appointment until the making of their report, the said commissioners having permitted the clamor and talk before mentioned, and permitted defendants to talk to them about their poverty, and that the work would confiscate their lands and bankrupt them; and that said commissioners boarded and lodged with Lafayette Drake, a defendant and land owner affected by the work, and opposed thereto, all of which influenced said commissioners.

The record then recites that "afterwards, to wit, on the —— day of February, 1891, the defendants moved the court to strike out said complaint," * * * and thereupon plaintiffs gave notice to the court and the defendants of their intention to save, by a bill of exceptions, the questions of law arising on the rulings of the court on said complaint and motion to strike out, for an appeal to the Supreme Court upon a bill of exceptions only of so much of the record as presents said questions of law, as provided by section 630, R. S. 1881; and that afterwards, to wit, on the 31st day of March, 1891, the following further proceedings were had in this cause, wherein the court sustained said motion of defendants to strike out said pleading, to wit: "Come again the parties, by attorneys, and the court being advised, sustains the motion of the defendants to strike out the complaint of the plaintiffs to set aside the report of the commissioners herein, to which ruling of the court the plaintiffs except; and thereupon the court now

approves said report, and this cause is now dismissed;
* * * to which order of dismissal the plaintiffs object
and except, and now pray an appeal," etc.

This recital, and, in fact, the whole of so much of the
record in this cause as is brought to this court on this ap-
peal, is embraced in a bill of exceptions.

The appellees insist that no question is presented by the
record because the petition for drainage is not embodied
therein, and they cite *Miller* v. *Seligman*, 58 Ind. 460, in
support of that proposition.

That was a case in which the attempt was made to ap-
peal on a reserved question of law, upon a bill of excep-
tions only, as in this case. The error complained of in
that case was a refusal of the trial court to allow the ap-
pellant to file a certain answer set out in the bill of excep-
tions, but the complaint was not embodied in the bill of
exceptions, the case having originated before a justice of
the peace. This court said (Justice Niblack delivering the
opinion):

"Without the complaint before us in some form, we
are unable to judge of either the relevancy or the mate-
riality of the matters alleged in the answer which the ap-
pellant asked leave to file; and without the transcript, or
an authorized synopsis of it, we are unable here to know
what occurred before the justice." * * "We have no such
statement in the record as is necessary to enable us 'to ap-
prehend the particular question involved.'"

It is obvious that the question involved here is whether
the trial court made the proper disposition of the objec-
tions to the report of the commissioners. Those objections
in no way called in question anything contained in the pe-
tition, nor did the validity of those objections at all depend
on the petition or anything contained in it. It was, there-
fore, wholly unnecessary to embody the petition in the bill
of exceptions. The statute only requires that the "Court
shall thereupon cause the bill of exceptions to be so made

that it will distinctly and briefly embrace so much of the record of the cause only, and the statement of the court, as will enable the Supreme Court to apprehend the particular question involved."

In *Shugart* v. *Miles*, 125 Ind. 445, this court said concerning this provision, that "The statute is in furtherance of justice—it is remedial; it tends to simplify procedure; it lightens the burdens of litigants without injustice to any one, and, when properly followed, questions may be presented to this court unclouded by a mass of useless verbiage, and unobscured by voluminous matters of immaterial evidence."

Accordingly, we hold that only such parts of the record need be embodied in the bill of exceptions, in an appeal of this kind, as will enable this court "to apprehend the particular question involved." Therefore, it was not necessary to embrace the petition in the bill of exceptions, in order to present the questions reserved.

The first error assigned is "Sustaining the motion of the defendants to strike out the complaint of the plaintiffs to set aside the report of the commissioners." The paper here referred to as a complaint was a motion to set aside the report of the commissioners, though it is designated elsewhere in the record as both a motion and a complaint. It has been often held by this court, that the character of a pleading is not determined by the name or designation applied to it by the pleader, but is to be determined by the contents of the same. *Searle* v. *Whipperman*, 79 Ind. 424; *Johnson* v. *Hosford*, 110 Ind. 572.

The pleading in question purports, in the body thereof, to be a motion to set aside the report of the drainage commissioners, and to refer the petition to new commissioners, for the reasons therein stated. It was, therefore, nothing but a motion. Indeed, the drainage act, under which the proceeding was instituted, does not contemplate the filing of a complaint to set aside a report of the commissioners.

Then the motion of the appellees to strike out appellants' motion to set aside the commissioners' report, was a superfluous motion, as was said by this court in *White* v. *Morgan & Co.*, 119 Ind. 338, that "A 'motion to strike out another motion to strike out,' and to reject a demurrer, are usually frivolous, and ought not to be entertained or entered of record by the trial court."

And so we hold that such motion ought not to have been entertained. Indeed, the court ought not to have allowed the same to be filed, and after it was filed, ought, of its own motion, to have stricken it out as a needless incumbrance of the record, because the same relief demanded and the same question raised by it would be afforded and raised by a proper ruling on the other motion.

But the trial court did entertain such motion, and actually sustained it, and the question we have to determine under this assignment of error is, was it error to sustain such motion? The answer to that question depends, to some extent, upon what effect the sustaining of such second motion had upon the first motion. It can not be justly said that it had no effect. The court below has treated it as if it had some effect upon the first motion, namely, to strike it from the files. For all practicable purposes, it had the same effect as overruling the first motion would have had.

Upon reason, it would seem that if the court sustained a motion to strike out a motion, such act indicates that the court was of the opinion that the first motion was not well taken, and, therefore, ought not to be sustained. It would seem to follow that the trial court, by entertaining the second motion to strike out the first, indicated a purpose and intention to hold that the first motion was not well taken, and ought to be overruled. This precise point was adjudged by the Supreme Court of California in *Lang* v. *Superior Court*, 71 Cal. 491. It is there held that sustaining a motion to strike out another motion is equivalent to

overruling the first motion. We think that decision is a correct declaration of the law, and, therefore, we adjudge that the sustaining of the motion to strike out the motion to set aside the report has the effect to overrule the latter motion. And, though the error assigned is the sustaining of the motion to strike out the other motion, we will treat it as if the error assigned was overruling the motion to set aside the report, for such is the effect of the action of the lower court assigned for error. It follows from this that the question presented by this assignment is, was it error to overrule the motion to set aside the report of the commissioners?

It has been held by this court that "where a motion shows on its face a right to the relief it asks, it can not be rejected on the motion of the adverse party." *Johnson* v. *Moore,* 112 Ind. 91. But the question remains, was it error to overrule or reject the motion to set aside the report of the commissioners? That depends on whether the first motion showed, on its face, a right to the relief demanded in it. It is insisted by the appellees' counsel that, under the authority of *Zigler* v. *Menges,* 121 Ind. 99, " the decision of the commissioners of drainage is analogous to the decision of the common council of a city, upon the question of benefits from the construction of sewers, it is final in each particular proceeding, in the absence of fraud." But we do not think that case is decisive of this, because the objections to the report here challenge the legality of the report on it face, and the competency of one of the commissioners to act, and charge the commissioners with misconduct in connection with some of the appellees, tending at least to prevent a fair and impartial discharge of the duties of the commissioners. The fourth to seventh grounds of the motion, inclusive, relate to these matters. The truth of these several grounds of objection to the report is not in any way established in the record. And the motion being in the nature of a motion

for a new trial, matters of fact outside of the record, as these four grounds were, ought to be supported by affidavit or other proof of their truth, before the court was justified in believing them true. The court, therefore, did not err in overruling the motion, so far as these four grounds were concerned.

The other grounds are (1) that the report was not verified; (2) that it does not set out the estimated cost of the proposed work, and (3) that it does not set out the benefits, etc. The truth of these grounds is established by the record. And if they are sufficient in law to overthrow the report, then the motion to set aside the report shows, on its face, a right to the relief demanded in it. Does the statute require the report to be verified and set forth the cost and benefits in a report like this? We think not. The statute requires the commissioners "to consider, *first,* whether the drainage proposed is practicable; *secondly,* whether, when accomplished, it will improve the public health, or benefit any public highway, * * * *thirdly,* whether the costs, damages and expenses, * * * will be less than the benefits. * * * If they find any of these inquiries in the negative, they shall make report of such finding to the court, and thereupon the petition shall be dismissed at the cost of the petitioners. But if they find otherwise, they shall proceed and definitely determine the best and cheapest method of drainage, the termini and route, location and character of the proposed work, and fix the same by metes and bounds, courses and distances and description, including grades and bench marks, estimate the cost thereof, divide the drain or ditch into sections not more than one hundred feet in length, and compute and set out the number of cubic yards of excavation in each section, assess the benefits or injuries, as the case may be, to each separate tract of land to be affected thereby, and to easements held by railways or other corporations, and make report to the court, as directed, under oath."

Blemél *et al. v.* Shattuck *et al.*

We think it clear that there are two kinds of reports authorized by this statute. One is where any one, or all, of the three facts essential to support a drainage petition is found in the negative by the commissioners; and the other is where all three of such facts are found in the affirmative. In the latter sort of a report, among other things, the estimated cost of the work, and the benefits or injuries assessed to each separate tract of land affected thereby must be embraced. In the former, nothing is required to be embraced but the negative finding of any one or more of the three essential facts before mentioned; and in that case, no verification or oath of the commissioners is required in support of such report, inasmuch as they are at all times acting under an official oath. But where the finding is an affirmative one, where the estimated cost of the work and the benefits or injuries to each tract are to be assessed and reported, such report must be made under oath.

It follows from what we have said, that the report in question, being a negative one, was not required by the statute to be verified or supported by an affidavit, and it also follows that such negative report was not required by the statute to contain a statement of the estimated cost of the work, and the benefits or injuries to each tract.

We therefore conclude that there was no error in overruling the motion to set aside the report of the commissioners, which, in effect, was done by sustaining the appellees' motion to strike out that motion.

The second alleged error is the action of the Circuit Court in dismissing the petition. As the statute required the dismissal of the petition on a report of a negative finding, the Circuit Court correctly followed the statute in dismissing the petition.

Having carefully considered all the errors assigned, and finding no error in the record, the judgment is affirmed.

Filed February 2, 1893.